IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Olin Coones,**

        **Petitioner,**

**v.**                                                        **Case No. 16-3090-JWL**

**Jay Shelton et al.,**

        **Respondents.**

## **MEMORANDUM & ORDER**

Olin Coones is a Kansas state inmate. Following a jury trial in state court, Mr. Coones was convicted of first-degree premeditated murder in connection with the death of Kathleen Schroll. He was sentenced to a mandatory minimum sentence of 50 years pursuant to K.S.A. § 21-4635. The Kansas Supreme Court affirmed Mr. Coones' conviction but vacated his sentence based on an intervening decision in which the Kansas Supreme Court held that Kansas' "hard 50" sentencing scheme was unconstitutional under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). On remand, the district court sentenced Mr. Coones to a mandatory minimum sentence of 25 years. Mr. Coones, with the assistance of counsel, has now filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 and a memorandum in support of that petition. As will be explained, the petition is denied.

**I.     Background**

The facts underlying Mr. Coones' murder conviction, as determined by the Kansas Supreme Court on Mr. Coones' direct appeal, are as follows.[1] Mr. Coones was charged with the first-degree premeditated murder of Carl and Kathleen Schroll, who were discovered dead in their home on April 7, 2008, at around 2:30 a.m. *State v. Coones*, 339 P.3d 375, 381 (Kan. 2014). There were no signs of a struggle, and nothing was stolen. *Id*. Ms. Schroll died from a gunshot wound to the back of her head. *Id*. Mr. Schroll died from two gunshot wounds to the chest. *Id*. A cordless phone and a revolver were found lying near Ms. Schroll's body. *Id*. Her daughter said she had seen the gun in her mother's purse previously. *Id*. Ms. Schroll's DNA was found inside the barrel and on the trigger. *Id*. The bullets located in the bodies were from the same caliber gun, but too deformed to establish they were fired from that revolver. *Id*.

Mr. Coones was tried twice. *Id*. In the first trial, he was acquitted of Mr. Schroll's murder and convicted of Ms. Schroll's murder. *Id*. The district court granted a motion for new trial on the conviction because the State did not timely disclose computer evidence to the defense. *Id*. At his second trial, Mr. Coones was represented by the same attorney, Patti Kalb. *Id*. The same prosecutor tried the State's case, and the same district court judge presided. *Id*. The record reflects that the parties agreed to retry the case based on the evidentiary rulings from the first trial. *Id*. For the most part, the same evidence was admitted at the second trial. *Id*. The

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." Although this presumption may be rebutted by Mr. Coones, he has not challenged any of the factual determinations made by the Kansas Supreme Court. Those facts, then, are taken from the Kansas Supreme Court's decision nearly verbatim.

exception was some additional computer evidence that Mr. Coones presented about his computer usage the night of the murders. *Id*.

Ms. Schroll's mother, Elizabeth Horton, testified that she was awakened by a phone call at 2:21 a.m. the night Ms. Schroll died. *Id*. Ms. Horton looked at the caller ID and recognized Ms. Schroll's home phone number. *Id*. She also recognized Ms. Schroll's voice based on their daily phone conversations and because the caller said, "Mom." *Id*. Ms. Schroll told Ms. Horton that Mr. Coones was "in the house and he said he is going to kill Carl. He said he is going to kill me, and he said he has his tracks covered so no one else will know who did it." *Id*. Ms. Schroll repeated that statement to Ms. Horton and said that she had not called the police. *Id*. At that point, the line went dead. *Id*. Ms. Horton told her son, Randy Horton, what Ms. Schroll had said, and Randy Horton called 911. *Id*. An officer arrived at the Schrolls' home about 10 minutes later. *Id*. Upon entering the house, police found Mr. and Ms. Schroll dead. *Id*. Ms. Schroll's body was lying on her back in the entryway, and Mr. Schroll was in a bedroom. *Id*.

Photographs of Ms. Horton's caller ID screen were admitted at trial. *Id*. The caller ID display showed an incoming call at 2:21 a.m. on April 7, and identified the originating phone number as the victims' home phone number and the caller as "Schroll, Carl." *Id*. But Ms. Horton's phone records listed a different originating phone number and did not reflect Randy Horton's outgoing 911 call. *Id*. A recording of Randy Horton's 911 call was played for the jury. *Id*. On it, Randy informed the 911 operator that Ms. Schroll had just called and said that Mr. Coones was at her house "breaking in with a gun in his hand." *Id*. As the operator questioned Randy, Ms. Horton can be heard relaying information in the background. *Id*. Randy described Ms. Schroll's phone as going dead. *Id*.

The State's theory for motive was that Mr. Coones was angry because he believed that Ms. Schroll, who had been his father's caretaker, had been stealing from his father and exercised undue influence to inherit part of his father's estate. *Id*. Consistent with that theory, the prosecution presented evidence that Ms. Schroll and Mr. Coones had prior confrontations. *Id*. Ms. Horton testified she spoke with Ms. Schroll about Mr. Coones "practically every day. Every time something new came up with him, [Kathleen] called [Elizabeth] immediately." *Id*. Ms. Horton said Mr. Coones would drive past Ms. Schroll's home and that he "moved close to where she lived and drove past a lot." *Id*.

Blair Hadley, Ms. Schroll's daughter, testified that she was riding with Ms. Schroll the day before the killings and drove past a QuikTrip. *Id*. According to Ms. Hadley's testimony, Ms. Schroll told Ms. Hadley she had passed Mr. Coones on her way into QuikTrip the day before (two days before she was killed) and that Mr. Coones told Ms. Schroll, "You are not going to be spending no more of my dad's money, bitch." *Id*. at 381-82. Mr. Coones denied that a confrontation occurred, and a detective conceded that neither Ms. Schroll nor Mr. Coones appeared on the store's security video. *Id*. at 382.

Mr. Coones presented an alibi defense and advanced his own theory that Ms. Schroll had killed Carl in a murder-suicide. *Id*. Regarding the alibi, Mr. Coones offered his family's testimony about his activity the night of the murders. *Id*. His wife testified that Mr. Coones came to bed while their daughter and her fiancé were watching television. *Id*. She said that Mr. Coones only left the room once to go to the bathroom. *Id*. She testified that she heard him on the computer a few times during the night. *Id*. Information from Mr. Coones' computer established that someone logged in under his profile and conducted internet searches at 1:07

4

a.m. and 4:51 a.m., which left a gap in activity during the time of the murders. *Id*. Mr. Coones' daughter and her fiancé testified that they were watching a movie in the living room until 2:30 or 3 a.m. *Id*. The daughter said that Mr. Coones left the bedroom to go to the bathroom around 2:30 a.m. and returned to the bedroom. *Id*. The fiancé and Mr. Coones' wife both testified that Mr. Coones would have had to pass the living room to leave the house. *Id*.

Regarding his murder-suicide theory, Mr. Coones called a forensic scientist, Gene Gietzen, who testified that the velocity of blood spatter found at the victims' home could not eliminate the possibility that Ms. Schroll took her own life. *Id*. Mr. Gietzen was also critical of the evidence collected and tested by the State. *Id*. He said the State could have tested biological tissue found on Ms. Schroll's ring to determine whether it belonged to her, and that gunshot residue collection kits could have been tested to reveal whether residue was present. *Id*.

The jury convicted Mr. Coones of first-degree premeditated murder for Ms. Schroll's killing. *Id*. His attorney filed a motion for judgment of acquittal and a motion for new trial. *Id*. While those motions were pending, Mr. Coones' trial counsel withdrew. *Id*. Mr. Coones' new counsel filed a second motion for new trial, which alleged that trial counsel's performance fell below an objective standard of reasonableness. *Id*. The district court held an evidentiary hearing limited to whether trial counsel's performance was deficient. *Id*. The court indicated it would hold a second hearing on whether Mr. Coones was prejudiced by his attorney's performance if it found deficient performance. *Id*. Ultimately, the court ruled that trial counsel's performance did not fall below an objective standard of reasonableness and then denied the remaining issues for a new trial. *Id*. On direct appeal to the Kansas Supreme Court, the Court affirmed Mr. Coones' conviction. *Id*. at 391.

## II.     Applicable Standards

28 U.S.C. § 2254 governs the review of habeas petitions and focuses on how the state court resolved the claim. *Williams v. Trammell*, 782 F.3d 1184, 1191 (10th Cir. 2015) (citing *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011)). For claims that the state court adjudicated on the merits, the court will grant habeas relief only if a petitioner establishes that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." *Id*. (quoting 28 U.S.C. § 2254(d)(1)-(2)).

Moreover, a federal court cannot grant a state prisoner's habeas petition unless the petitioner has exhausted his claims in state court. *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). For a claim to be exhausted, the "state prisoner must give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. The claim will be deemed exhausted, however, if it is now too late to pursue relief in state court. *Velarde v. Archuleta*, ___ Fed. Appx. ___, 2016 WL 362491, at *3 (10th Cir. Jan. 29, 2016) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (exhaustion requirement "is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law."); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.")). As the Circuit has recognized, however, "exhaustion in this manner is not much advantage" to a § 2254 petitioner. *See id*.

6

"[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id*. (quoting Gray, 518 U.S. at 162). "Cause excusing a procedural default must be some objective factor external to the habeas petitioner, not fairly attributable to him, that impeded his efforts to comply with the procedural rule in question." *Id*. (quoting *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003)). And the prejudice prong requires the applicant to show "actual prejudice as a result of the alleged violation of federal law." *Fairchild v. Trammell*, 784 F.3d 702, 719 (10th Cir. 2015).

### III. Procedurally Barred Claims

Mr. Coones contends that his Sixth Amendment rights were violated by his trial counsel's failure to make a contemporaneous objection to the testimony of Ms. Hadley, Ms. Schroll's daughter, concerning the alleged conversation that Ms. Schroll had with Mr. Coones at a gas station.[2] According to Mr. Coones, the testimony constitutes inadmissible double hearsay and violated the Confrontation Clause such that his trial counsel should have objected to it at trial and that her failure to do so prejudiced Mr. Coones. While Mr. Coones argued on direct appeal

---

[2] The record reflects that the State, prior to trial, filed a motion in limine seeking a ruling on the admissibility of Ms. Hadley's testimony and that Mr. Coones, in response to that motion, objected to the testimony. Nonetheless, under Kansas law, evidentiary errors will not be reviewed on appeal unless the party has lodged a contemporaneous objection at trial. *See State v. King*, 288 Kan. 333, 349 (2009).

that the trial court erred in admitting the testimony because it constituted double hearsay,[3] Mr. Coones did not raise the separate and distinct claim that his trial counsel was ineffective for failing to object to the testimony on the grounds.  And Mr. Coones never argued before the Kansas Supreme Court that the testimony was inadmissible based on the Confrontation Clause.  The claim, then, is procedurally defaulted.  *See Velarde v. Archuleta*, 640 Fed. Appx. 740, 744 (10th Cir. 2016).

The procedural bar prevents this court from reviewing the defaulted claim unless Mr. Coones can demonstrate cause and prejudice for the default or, alternatively, if denying review would result in a fundamental miscarriage of justice because Mr. Coones has made a credible showing of actual innocence.  *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).  Mr. Coones does not offer any explanation whatsoever for his failure to raise this claim on direct appeal.  Because he does not argue cause for his procedural default, the court need not reach the question of actual prejudice.  *See Coleman*, 501 U.S. at 750.  Moreover, Mr. Coones has not shown or even alleged a fundamental miscarriage of justice arising from this claim.  This claim, then, is procedurally barred.

## IV.   Preserved Claims

On direct appeal, Mr. Coones asserted several ineffective assistance claims, including claims that his trial counsel's performance was constitutionally deficient in that she failed to object to the "caller ID" evidence; failed to object to Ms. Horton's testimony about the phone

---

[3] The Kansas Supreme Court rejected this argument and concluded that the testimony was admissible because each out-of-court statement in the testimony satisfied an exception to the general exclusionary rule of K.S.A.§ 60-460.

8

call from Ms. Schroll as a violation of the Confrontation Clause; and failed to cross-examine police officers on their failure to conduct gunshot residue tests on Ms. Schroll.  The Kansas Supreme Court rejected each of these claims on the merits.  Because the Kansas Supreme Court rejected Mr. Coones' ineffective assistance claims on the merits, the court must evaluate these claims through AEDPA's deferential lens.  *See Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014) (citing 28 U.S.C. § 2254(d)(1)).  The court, then, may grant relief only if Mr. Coones demonstrates that the Kansas Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court law.  *Id*. (citing 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 131 S. Ct. 770, 783–84 (2011)).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that a defendant, to prove an ineffective assistance claim, must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Id*. at 1224 (citing *Strickland*, 466 U.S. at 687).  "[T]he rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Id.* at 1225 (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).  Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult than establishing a *Strickland* claim.  *Frost*, 749 F.3d at 1225 (quoting 28 U.S.C. § 2254(d)(1)) (citations omitted).  Indeed, a state court decision will be deemed reasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. (quoting *Richter*, 131 S. Ct. at 785).

In his petition, Mr. Coones first asserts that his trial counsel was constitutionally deficient because she failed to object to the "caller ID" evidence—namely, failing to object (for lack of foundation) to photographs of Elizabeth Horton's caller ID display and failing to obtain an

9

expert opinion on "call spoofing." With respect to the photographs, the Kansas Supreme Court held that a proper foundation was laid for the photographs such that trial counsel's failure to object on that basis was not deficient. Specifically, the Court held that under *State v. Schuette*, 273 Kan. 593 (2006), sufficient foundational evidence existed for admission of the photographs, including the fact that Carl Schroll's name and telephone number appeared in the caller ID display and that Ms. Horton testified that she knew her daughter's voice and recognized it as the voice of the person who called her. *Coones*, 339 P.3d at 384-85. This court is bound by the Kansas Supreme Court's determination that a proper foundation was laid. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus). Accordingly, the court cannot conclude that it was unreasonable for the Kansas Supreme Court to find that trial counsel was not deficient for failing to raise a meritless objection. *See Cannon v. Mullin*, 383 F.3d 1152, 1177 (10th Cir. 2004) (failure to raise meritless objections is not ineffective assistance).

At trial, evidence was introduced of a discrepancy between the number displayed on Ms. Horton's caller ID device and the number listed in the business records for the call. In light of this discrepancy, Mr. Coones asserts this counsel should have retained an expert opinion on "call spoofing" to explain to the jury that a caller can easily and deliberately falsify information transmitted to a caller ID display to disguise the caller's identity. Mr. Coones asserts that his counsel's failure to secure an expert on this issue amounted to deficient performance. The Kansas Supreme Court held that trial counsel's failure to call an expert on this issue constituted a tactical decision within the parameters of objectively reasonable performance:

10

> At the hearing on Coones' motion for a new trial, Kalb testified she did not hire an expert because, after researching call spoofing, she determined it was not vital to Coones' case. Additionally, she was concerned that upon digging further into the issue she would discover "more proof that it was, in fact, a true phone call."
>
> \* \* \* \*
>
> The decision to forgo further inquiry into the possibility the call did not originate from Carl and Kathleen's home telephone number was not objectively unreasonable. Kathleen's statements to Elizabeth were the State's primary evidence against Coones. Kalb made a tactical decision based on the possibility that additional investigation into the discrepancy between the AT&T phone records and the caller ID would further confirm the call's authenticity. With evidence of irregularities in AT&T's telephone records before the jury, Kalb remained free to raise the issue whether the caller ID evidence was reliable without adding additional strength to the prosecution's case. This claim is without merit.

*Coones*, 339 P.3d at 385. Mr. Coones does not suggest that the Kansas Supreme Court's application of Strickland to this claim was unreasonable. Indeed, Strickland itself recognizes that "strategic choices made after thorough investigation" are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91. Here, the record supports the conclusion that trial counsel investigated the "spoofing" issue and, afterwards, made the strategic decision not to delve deeper into that issue. Nothing here suggests that the Kansas Supreme Court's decision on this issue was contrary to or involved an unreasonable application of *Strickland*.

Mr. Coones next contends that his trial counsel's performance was constitutionally deficient because she failed to object to Ms. Horton's testimony about the phone call from Ms. Schroll as a violation of the Confrontation Clause. On direct appeal, the Kansas Supreme Court rejected this claim, finding that Ms. Schroll's statements were not testimonial under *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) such that the admission of the statements did not violate the Confrontation Clause. *Coones*, 339 P.3d at 383-84. According to the Court, it was not

11

reasonable to believe that the "primary purpose of the telephone call as preserving evidence for a later prosecution." *Id*. at 384.  In so finding, the Court highlighted that Ms. Schroll made the statement to her mother; that the call was not part of a government investigation; and that Ms. Schroll was speaking about an ongoing emergency.  *Id*.  The Court concluded, then, that trial counsel's failure to object on Confrontation Clause grounds was not objectively unreasonable, because the objection would have been meritless.  *Id.*   In his submissions, Mr. Coones does not articulate how the Kansas Supreme Court's decision is contrary to or unreasonable under *Crawford* or *Strickland*.  And the court is convinced that the Court's application of the facts to *Crawford* was entirely reasonable and that its resulting application of *Strickland* was reasonable.[4]  Mr. Coones has simply not shown that he is entitled to relief.

Mr. Coones further asserts that his trial counsel provided ineffective assistance by failing to cross-examine police officers on their failure to conduct gunshot residue tests on Ms. Schroll.  Despite the fact that Mr. Coones had not raised this argument before the district court, the Kansas Supreme Court reviewed the claim because the record quickly dispelled the argument:

> At trial, Kalb elicited testimony from one of the lead detectives in the case that police failed to conduct gunshot residue testing on Coones and the victims.  And Coones' expert witness testified gunshot residue kits were collected and police could have tested them to determine whether Kathleen had gunshot residue on her hands.  Kalb also referenced this omission during closing arguments and noted the defense expert could not eliminate the possibility that Kathleen shot herself in the head. Kalb stated, "They didn't do gunshot residue tests on her hands or Carl's. They didn't do any of the tests necessary."

---

[4] Although the court does not reach the merits of Mr. Coones' argument concerning his counsel's failure to contemporaneously object to Ms. Hadley's testimony as a violation of the Confrontation Clause, it appears that a similar analysis would apply and would be reasonable.

> Coones seems to argue Kalb's performance was deficient because she did not argue this point more forcefully, but the jury was clearly apprised of these facts. Coones' claim lacks merit.

*State v. Coones*, 339 P.3d 375, 387 (Kan. 2014).  Mr. Coones does not articulate (much less demonstrate) that all fair-minded jurists would agree that the Kansas Supreme Court's decision was incorrect on this issue.  And this court, in reviewing the Kansas Supreme Court's reasoning under the applicable standard of review, easily concludes that the Court did not unreasonably apply *Strickland*'s performance prong to Mr. Coones' claim and that the Court did not base its decision on an unreasonable determination of the facts.  For the foregoing reasons, Mr. Coones is not entitled to habeas relief on his *Strickland* claims.

Finally, Mr. Coones asserts that the cumulative effect of the errors committed by his trial counsel deprived him of his constitutional rights.  The cumulative-error doctrine applies in the federal habeas context only where there are two or more actual constitutional errors.  *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) (citing *Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012)).  Mr. Coones has not identified one actual constitutional error in this case and, accordingly, his cumulative-error argument necessarily fails.

**V.     Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that]

13

showing." A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). With respect to the claims denied above, for the same reasons stated, Mr. Coones has not satisfied the requisite standard. The court concludes that a certificate of appealability should not issue in this case.

## VII. Conclusion

After careful review of the record, the court concludes that Mr. Coones has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for a writ of habeas corpus is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Coones' petition for writ of habeas corpus is **denied** and the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated this 24th day of October, 2016, at Kansas City, Kansas.

s/John W. Lungstrum  
John W. Lungstrum  
United States District Judge